IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAGE BRUCE BUTLER,

        Plaintiff,

    v.

ERIN REYES *et al.*,

        Defendants.

Case No. 2:25-cv-00508-SB

**ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Sage Bruce Butler ("Butler"), an adult in custody ("AIC") at Two Rivers Correctional Institution ("TRCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983. Before the Court are Butler's motions for leave to amend and supplement his complaint pursuant to Federal Rule of Civil Procedure ("Rule") 15 (Pl.'s Mot. Leave File Am./Suppl. Compl. ("Mot. Am."), ECF No. 42) and for preliminary injunction and temporary restraining order (Pl.'s Mot. Prelim. Inj./TRO ("Mot. Prelim. Inj."), ECF No. 56). For the following reasons, the Court denies the motions.

///

PAGE 1 – ORDER

## BACKGROUND

Butler filed the complaint in March 2025, alleging that from 2022 to 2024, several TRCI staff members and Oregon Department of Corrections ("ODOC") administrators violated his rights under the First, Fifth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act by denying his requests for religious accommodation and restricting certain aspects of Native American religious practices. (*See* Compl. at 5-20, ECF No. 2.) Butler alleges that he has suffered retaliation because of his frequent complaints about racial and religious discrimination at TRCI, including his removal from the religious services callout on at least one occasion, the withholding of tribal mail, and the obstruction or denial of his grievances and administrative complaints. (*See id.* at 19-20.) Defendants waived service of the complaint on June 16, 2025 (ECF No. 9), and the parties thereafter litigated this case in the usual course.

On or about April 1, 2026, Butler was transferred from TRCI to the Oregon State Penitentiary ("OSP"). (Decl. Sage Bruce Butler Supp. Mot. Extension Time ("First Butler Decl.") at 1, ECF No. 41.) Butler alleges that soon after he arrived at OSP, another AIC assaulted him and OSP staff placed him in administrative segregation for his protection. (*Id.*) Butler alleges that while in segregation, his "ability to litigate . . . [was] severely hindered" by his limited access to legal materials and delayed mail. (Decl. Sage Bruce Butler Supp. Mot. Appointment Counsel ("Second Butler Decl.") at 2, ECF No. 44.) Butler claims that ODOC officials transferred him to OSP to "punish [him] for current litigation, grievances, and attempts to hold [Defendants] accountable for a wide range of micro[-]aggressions . . . [and] a campai[g]n of harassment" against Butler. (*Id* at 1.)

///

PAGE 2 – ORDER

On April 8, 2026, Butler moved to amend the allegations in his complaint and add a claim based on materials produced during discovery. (Mot. Am. at 1.) Butler also moved to supplement his complaint with new claims arising from his transfer to OSP. (*Id.*) However, before the parties fully briefed the motion to amend, Butler moved for a preliminary injunction and temporary restraining order requiring, among other things, his return to TRCI. (Mot. Prelim. Inj. at 1-2.) Defendants oppose both motions. (*See* Resp. Mot. Leave File Am. Compl. ("Defs.' Resp. I"), ECF No. 47; Resp. Mot. Prelim. Inj. ("Defs.' Resp. II"), ECF No. 61.)

**DISCUSSION**

**A.      MOTION TO AMEND OR SUPPLEMENT COMPLAINT**

**1.      Applicable Law**

At this late stage of the litigation, Rule 15 permits a party to amend his pleading "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a). Although leave to amend shall be freely given "when justice so requires[,]" the Court may deny a motion to amend if the motion was made in bad faith, if amendment would prejudice the opposing party or would cause undue delay, or if the proposed amendment is futile for lack of merit. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Futility alone justifies denial, but "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

Rule 15 further provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). "The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are

PAGE 3 – ORDER

filed." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1057 (9th Cir. 1982) (citations omitted). "The factors relevant to a Rule 15(a) motion to amend are considered when addressing a motion to supplement under Rule 15(d)." *Singh v. Washburn*, No. 2:14-cv-01477-SB, 2016 WL 1039705, at *9 (D. Or. Feb. 5, 2016) (simplified); *see also Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) (holding that a court may deny leave to supplement a complaint based on undue delay, prejudice to the opposing party, or futility). The Court has "broad discretion" in deciding a motion to supplement under Rule 15(d). *Keith*, 858 F.2d at 473.

2.      **Analysis**

Butler requests leave to amend his allegations to "[a]dd and or remove different facts and add a new legal claim in light of all/some or any of produced discovery from Defendants." (Mot. Am. at 1.) The Local Rules instruct that a motion for leave to file an amended pleading "must describe the proposed changes" to be made. LR-15(a)(2). Otherwise, the Court cannot properly evaluate whether to grant leave to amend. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (explaining that although leave to amend should be freely given when justice so requires, a motion to amend should not automatically be granted and may instead be denied "if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit") (simplified). Although Butler specifies that his motion for leave to amend is supported by the First and Second Butler Declarations, there is nothing in either declaration to identify or explain the proposed amendments. Because Butler's motion and supporting declarations lack adequate detail, the Court cannot determine whether amendment is appropriate. Accordingly, the Court denies Butler's request to amend his complaint.

Butler also seeks to supplement the complaint to raise claims concerning the conditions of his confinement and alleged retaliation suffered after his transfer to OSP in April 2026. (*See*

PAGE 4 – ORDER

Mot. Am. at 1.) Defendants object that doing so would improperly add new, distinct claims that would prejudice defendants and unnecessarily extend and complicate this litigation. (Defs.' Resp. I at 3-5.) The Court agrees.

"While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (simplified). Butler's proposed supplemental claims are distinct and separate from those raised in the complaint because they are based on events that occurred at a different ODOC facility years after the events at issue in this case. (*Compare* Mot. Am. at 1, seeking to add claims concerning "recent events of [Butler] being put in harm's way and assaulted" at OSP in April 2026, *with* Compl. at 5-20, setting forth discrete incidents in which TRCI staff allegedly denied religious accommodations and interfered with Butler's religious practice between 2022 and 2024.) Moreover, it is unclear whether any currently named defendants were involved in the events upon which Butler bases his proposed supplemental claims. *See Shottenkirk v. Patton*, No. 2:20-cv-00188-SB, 2021 WL 4142669, at *3 (D. Or. Sept. 10, 2021) (finding the plaintiff's proposed supplemental claim "separate and distinct from the claims . . . in the operative complaint" because it "relates to conduct that occurred between one to two years after the incidents" at issue in the original complaint and "does not plead any claims against the currently named defendants in this case") (citations omitted); *see also Singh*, 2016 WL 1039705, at *10 (explaining that the plaintiff's "supplemental complaint does not include new toxic mold and inadequate medical care claims against the currently named defendants in this case" and therefore the proposed supplemental claim is not a "discrete and logical extension of the original claim against the already named defendants") (simplified).

///

PAGE 5 – ORDER

Permitting Butler to supplement his complaint by adding new and separate claims against new defendants would "run[] counter to the interests of judicial economy." *Shottenkirk*, 2021 WL 4142669, at *4 (citations omitted). Indeed, the addition of new claims and defendants would likely require Defendants to abandon their pending summary judgment motion and conduct additional discovery. *See Underwood v. Nooth*, No. 2:16-cv-01321-PK, 2017 WL 8785575, at *2 (D. Or. Dec. 11, 2017) (noting that "[c]ourts are reluctant to grant motions to amend after the parties have finished discovery and filed summary judgment motions") (citations omitted). "As a result, the current defendants would be prejudiced by the increased scope, cost, and length of this litigation." *Shottenkirk*, 2021 WL 4142669, at *4 (citation omitted); *see also Candler v. Santa Rita Cnty. Jail Watch Commander*, No. C-11-1992-CW (PR), 2013 WL 5568248, at *2 (N.D. Cal. Oct. 9, 2013) ("Because the events in the proposed supplemental pleading occurred more than two years after the events alleged in Plaintiff's amended complaint, responding to them at this time would cause undue prejudice to Defendants"). For these reasons, the Court denies Butler's request to supplement his complaint.

## B.    MOTION FOR PRELIMINARY INJUNCTION

### 1.    Applicable Law

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). The elements of the test are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d. 1127, 1131 (9th Cir. 2011) ("For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits.") (citation omitted). "When the government is a party, [the] last two

PAGE 6 – ORDER

factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The standard for granting a temporary restraining order is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A "mandatory injunction orders a responsible party to take action" and "is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (simplified); *see also Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 (D. Or. 2018) (noting that the "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction." (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015))).

The Prison Litigation Reform Act ("PLRA") imposes additional restrictions on a court's ability to grant injunctive relief. Any such "[(1)] relief must be narrowly drawn, [(2)] extend no further than necessary to correct the harm the court finds requires preliminary relief, and [(3)] be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). The PLRA requires that courts "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity[.]" *Id.*

Finally, a plaintiff's motion for equitable relief must relate to the claims in his operative complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 638 (9th Cir. 2015) ("The district court properly ruled that [the plaintiff's] motion for injunctive relief was unrelated to its underlying complaint. [The plaintiff] cannot seek interim equitable relief of a nature it is not seeking in the final adjudication of its lawsuit"). The relationship with the operative complaint is sufficient if the temporary relief sought "would grant 'relief of the same

PAGE 7 – ORDER

character as that which may be granted finally.'" *Id.* at 636 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)). While new allegations of misconduct may support additional claims against a defendant, they "do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Id.* (citation omitted). Absent this relationship or nexus, the Court "lacks authority to grant the relief requested." *Id.*

### 2.    Analysis

Butler moves for preliminary injunctive relief in connection with his transfer to OSP in April 2026 and the conditions of his confinement at that facility. Specifically, Butler seeks a court order requiring ODOC officials to (1) transfer Butler back to TRCI; (2) return all of Butler's personal, legal, and religious property that he alleges was confiscated upon his transfer to OSP; (3) reinstate the housing, programming, and prison employment privileges that Butler earned at TRCI but lost upon transfer to OSP; (4) restore Butler's access to all Native American religious services and accommodations and "allow[] [him] to procure" an eagle from the United States Fish and Wildlife Services ("USFWS"); (5) provide "meaningful access" to the law library, computers, and canteen at OSP; and (6) cease "all retaliatory actions by the Defendants or agents of ODOC" at OSP including the "verbal, mental, and emotional abuse of solitary confinement, verbalizing by ODOC staff, slander [,] defam[ation,]" and Butler's transfer to other ODOC facilities. (Mot. Prelim. Inj. at 1-2.) Defendants argue that the Court should deny the requested preliminary injunctive relief because Butler's requests are moot, outside the scope of the complaint, and otherwise fail to satisfy the four-factor *Winter* test. (Defs.' Resp. II at 4-6.) The Court agrees.

It is undisputed that Butler was transferred from OSP back to TRCI on May 26, 2026. (*See* Notice, ECF No. 60; Defs.' Resp. II at 4.) Because Butler has received the relief he seeks— *i.e.*, his return to TRCI—the Court denies as moot that portion of Butler's motion. *See Murphy v.*

PAGE 8 – ORDER

*Hunt*, 455 U.S. 478, 481 (1982) (holding that a claim becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome") (simplified); *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin.") (citation omitted).

In addition, to the extent Butler seeks mandatory injunctive relief with respect to the conditions of his confinement at OSP (*i.e.*, requiring Defendants to return Butler's confiscated property, restore his privileges, increase his access to the law library, and stop alleged retaliatory conduct against him),[1] such relief is unavailable because it is outside the scope of Butler's operative complaint. *See Pac. Radiation Oncology*, 810 F.3d at 636 (explaining that there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself" and the relationship is sufficiently strong only where the injunction would provide "relief of the same character as that which may be granted finally") (simplified). Because the claims raised in Butler's operative complaint (which concern the alleged denial of religious accommodation at TRCI between 2022 and 2024) lack an adequate relationship or nexus to those in the instant motion for preliminary injunction (which concern

---

[1] To the extent Butler seeks to enjoin Defendants from transferring him to other ODOC facilities, he fails to allege that he will suffer an irreparable injury in absence of preliminary injunctive relief or that such injury is imminent. Although Butler insists that he will be assaulted and hindered in his efforts to litigate this case, his allegations are too speculative to establish irreparable harm. *See Caribbean Marin Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (noting that to meet the "irreparable harm" requirement, a plaintiff must demonstrate, rather than simply allege, imminent harm). In any event, Butler has no constitutionally protected liberty interest in being confined in a particular prison, *see Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that due process does not "protect a duly convicted [AIC] against transfer from one institution to another within the state prison system"), and without evidence that ODOC has or intends to transfer Butler for an illegitimate purpose, the Court must "afford appropriate deference and flexibility to state officials" managing Oregon's correctional facilities. *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (simplified).

PAGE 9 – ORDER

Butler's transfer to OSP and the ensuing consequences of that transfer), "the district court lacks authority to grant the relief requested." *Id.*

Finally, to the extent Butler seeks "full access" to Native American religious services and permission to "procure" an eagle from USFWS, Butler requests identical relief in the complaint. (*See* Compl. at 21, setting forth requested relief including access to "drumming, pipe ceremonies, sweat lodge, spirit run, solstice ceremonies" and "eagle feathers, whole eagle, [eagle] parts" from USFWS.) Butler's request for immediate relief appears to be based on a rumor he heard from another AIC at OSP that ODOC "is trying to limit/shut down Native American ceremonies across the state to one sweat lodge and smudge a month here at OSP and all ODOC facilities[.]" (First Butler Decl. at 2.) Butler's speculation that ODOC may at some point seek to limit Native American religious practices at OSP or any other ODOC facilities is insufficient to demonstrate that he will suffer irreparable injury in the absence of immediate relief. *See Caribbean Marine Srvs. Co.*, 844 F.2d at 674 (explaining that "[a]t a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that [he] will be exposed to irreparable harm" and that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction") (simplified). Mandatory preliminary relief therefore is not warranted at this time. *See Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (noting that the other *Winter* factors need not be addressed if the plaintiff fails to show that he is likely to suffer irreparable harm in the absence of preliminary relief) (simplified).

///

///

///

///

PAGE 10 – ORDER

**CONCLUSION**

For the reasons stated, the Court DENIES Butler's Motions for Leave to File

Amended/Supplemental Complaint (ECF No. 42) and for Preliminary Injunction/Temporary

Restraining Order (ECF No. 56).

**IT IS SO ORDERED.**

DATED this 28th day of July, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 11 – ORDER